Burke, J.
(dissenting). As I stated in Robin v. Incorporated Vil. of Hempstead (30 N Y 2d 347, 352) chapter 127 of the Laws of 1970 is not a valid exercise of legislative power. The majority opinion states the issue as: “ whether the law should accord legal personality is a policy question* which in most instances devolves on the Legislature, subject again of course to the Constitution as it has been ‘ legally ’ rendered ”.
This argument was not only made by Nazi lawyers and Judges at Nuremberg, but also is advanced today by the Soviets in Eastern Europe. It was and is rejected by most western world lawyers and Judges because it conflicts with natural justice and is, in essence, irrational. To equate the judicial deference to the wiseness of a Legislature in a local zoning case with the case of the destruction of a child in embryo which is conceded to be “ human ’ ’ and ‘ is unquestionably alive ” is an acceptance of the thesis that the “ State is supreme ”, and that “ live human beings ” have no inalienable rights in this country. The most basic of these rights is the right to live, especially in the ease of the ‘ unwanted ’ ’ who are defenseless. The late Chief *206 Judge Lehman once wrote of these rights: “ The Constitution is misread by those who say that these rights are created by the Constitution. The men who wrote the Constitution did not doubt that these rights existed before the nation was created and are dedicated by God’s word. By the Constitution, these rights were placed beyond the power of Government to destroy.” In other words, what the Chief Judge was saying was that the American concept of a natural law binding upon government and citizens alike, to which all positive law must conform, leads back through John Marshall to Edmund Bubke and Henby de Bbacton and even beyond the Magna Carta to Judean Law. Human beings are not merely creatures of the State, and by reason of that fact, our laws shpuld protect the unborn from those who would take his life for purposes of comfort, convenience, property or peace of mind rather than sanction his demise. Moreover, if there is a confiscation of property through a zoning law, it is “ constitutionally ” invalid. Recently, the United States Supreme Court held that the taking of a life of a murderer by a State was constitutionally invalid, and in the words of one Justice, was found to be “ immoral and therefore unconstitutional ” (Furman v. Georgia, 408 U. S. 238, 364-366 [Marshall, J., concurring]).
The Attorney-General argues that the legislative determination in choosing between the competing values involved herein is a value judgment committed to the legislative process of government, not to the discretion of the judiciary. Furthermore, it is argued that there is a legitimate State interest in a woman’s right of privacy and in the undesirable effect of unwanted children upon society. (See Lexogram, Vol. 4, No. 10.) Upon scrutiny, these arguments are not persuasive, and the legislation cannot stand for two reasons — it is irrational and unconstitutional.
The irrationality of the legislation in question has several aspects. In view of modern and reliable contraception devices, there is no reason for unwanted conceptions to take place that would cause an exceptional population growth. Secondly, the argument that these unborn children are unwanted is fallacious as there are many, many families presently interested in adoption, who would be more than happy to welcome such an infant into their home. Thirdly, as we reach zero population growth, the^e *207 is no compelling State interest to support the abortion legislation. Additionally, two other frequently raised arguments by proponents of abortion cannot withstand scrutiny. Thus, the plaint regarding women dying from botched abortions under the old law is easily answered. Examples of due justice for foetuses are more merciful than the unbounded exercise of pity for those few unfortunate pregnant women who fall into the hands of the few inexpert doctors. Thousands of illegal abortions were performed in Few York City hospitals under the old law without fatalities but with serious side effects. To overcome this self-created problem by destroying hundreds of thousands of foetuses by State law is uncivilized. At best, a few human beings are only possibly wholly preserved from a fate set in motion by themselves at the sacrifice of hundreds of thousands and soon millions of other human beings. For can the old abortion law be said to be an interference with a physician’s right to practice his profession. The old abortion law sanctioned therapeutic abortion when medically indicated, thus enabling the physician to save the life of the mother in extreme circumstances.
The more telling fact than the present legislation’s irrationality is its unconstitutionality. The unconstitutionality stems from its inherent conflict with the Declaration of Independence, the basic instrument which gave birth to our democracy. The Declaration has the force of law and the constitutions of the United States and of the various States must harmonize with its tenets. The Declaration when it proclaimed “ We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness ” restated the natural law. It was intended to serve as a perpetual reminder that rulers, legislators and Judges were without power to deprive human beings of their rights.
Unless there had been a Thomas Jefferson who was educated by a philosophy professor to know the primacy of the natural law — there would be no United States of America. For, if the Declaration had been written by a pragmatist for expedient reasons we never could have enlisted the sympathies and agreement of such a large part of the then world, including members of the British Parliament in our righteous cause. They would *208 know the pragmatic reasoning would be nothing more than pettifoggery, and had no basis in law.
We began our legal life as a Nation and a State with the guarantee that these were inalienable rights that come not from the State but from an external source of. authority superior to the State which authority regulated our inalienable liberties and with which our laws and Constitutions must now conform. That authority alone establishes the norms which test- the validity of State legislation. It also tests the Constitutions and the United Nations Convention against genocide which forbids any Nation or State to classify any group of living human beings as fit subjects for annihilation. In sum, there is the law which forbids such expediency. It is the inalienable right to life in the nature of the child embryo who is “ a human ” and is “ a living being Inalienable means that it is incapable of being surrendered (Webster’s Third New International Dictionary). Thus, the butchering of a fo.etus under the present law is inherently wrong, as it is an illegal interference with the life of a human being of nature.
The report of the Governor’s commission explanation that it was not dealing with * ‘ morality ’ ’ but only law, overlooked the fact that it turned its back on the law — the natural law reiterated in the Declaration of Independence. The reasons given for the enactment of the present abortion law are irrational from a medical, scientific and factually objective analysis. There is no need for abortion except in very limited medical circumstances.
Chapter 127.of the Laws of 1970, authorizing abortion “on demand ” is a resort to expediency which is recognized everywhere as the death of principle. The rationale of the majority opinion admits that customs do change and the Legislature could, if it should in the future be the attitude of the Legislature, do away with old folks and eliminate the great expense the aged are to the taxpayers. This, of course, would parallel the Hitler laws which decreed the death of all the inmates of mental hospitals and also decreed that for many purposes non-Aryans were nonpersons.
Chief Judge Lehman’s understanding of inalienable rights is the only understanding that makes any sense out of the *209 Declaration of Independence, the Magna Carta, the Bill of Rights and the United Nations Convention against genocide.
According to the majority opinion, valid law is a merger of legislative and executive emotions, whims and hunches — announced today and perhaps changed tomorrow. One’s rights are never permanent as the existence of the natural law is denied. The majority suggests that all law is man made. Such a philosophy of law we know would not attract persons educated in philosophy. Others, however, are attracted by pragmatism. This is just as dangerous as expediency because certain individuals think: we are realistic and self-sufficient — this legislation will control population growth and assist the taxpayers. This pragmatism, of course, is masked by a contrived theory exemplified in Abele v. Markle (342 F. Supp. 800) of giving the right of privacy of the woman an absolute paramountcy over the inalienable right of the foetus to life. On that false and unsupported premise (as I shall point out later) it then cites Griswold v. Connecticut (381 U. S. 479). That citation is inapposite. Here there are three people with different interests involved. The man, the woman and the foetus. The foetus has the superior ‘ ‘ right to life ’ ’ rather than the particular female’s or male’s concern to avoid responsibility. The proponents of abortion know that there are men who desire offspring for the joy as well as the responsibility they bring. The protection of the foetal life has been the concern of law givers even before the judicial Law of Moses, the great law giver (the Ten Commandments) down through the ages. Even in barbaric ages this was the law (see de Bracton, Sir Matthew Hale, Fleta, Sir Edward Coke, Sergeant Hawkins, Sir William Blackstone).
Under New York State law the foetus, if it is born, is entitled to posthumously share in a deceased husband’s intestate estate. This legislation gives the “ right ” to the wife to unilaterally, through abortion, appropriate the husband’s entire estate by preventing offspring and depriving the legally wedded husband of transmission of his blood line, name and properties to * ‘ flesh of his flesh ”: another inalienable right.
The proponents of abortion take refuge in concocted distinctions as to what living human beings are persons and what living human beings are not persons — to justify the massacre *210 of the innocents, over 400,000 in New York State this year. They belittle Ckitty, Coke and twist the statements of Hake to try to persuade those who, as did the author of the Declaration of Independence, recognize that the natural law granted inalienable rights to human living beings. They demand that the natural law expressed in the Declaration of Independence on which the United States is founded, should be ignored for expedient reasons. The pragmatists have a remarkable capacity for bearing the suffering of others with equanimity so long as the suffering is not imposed on them. They are just as callous toward their fellow human beings (they all started as foetuses) as the parents who slaughtered their children in the earlier centuries. In that age parents engaged in wholesale slaughter of children for the same expedient reasons dictating this legislation, which is forbidden by the natural law (see P. Pringle, Hue and Cry, William Morrow and Company, Great Britain).
In view of the myriad methods of contraception now approved and fully utilized by females of all ages, the pronouncement in Abele v. Markle (342 F. Supp. 800, supra) that women after conception have the unquestioned right to make the sole decision to abort is contrary to the State’s responsibility to preserve and protect life. (Furman v. Georgia, 408 U. S. 238, 364 — 366, supra.) Thé contraception methods available today if used are more than sufficient to control population growth. Witness the fact that we have already reached zero population growth and possibly gone below it. The complete disrespect for the foetus’ right to life is in keeping with the cruelties which antedated the age of the lawmakers of Judaism, and certainly is a return to the barbarism of the English people of the early centuries (see P. Pringle, Hue and Cry, supra).
There is no medical or scientific doubt that foetuses are a group of human beings not a part of his or her mother. Every respected doctor, specializing in this field, treats the unborn child as a second patient different and individually distinct from the mother. Unless we intend to indorse the totalitarian philosophy already practiced of destroying the elderly, the insane, the newly born defective child or other groups of “ lesser quality ” as defined by the “ state ”, scrap the Declaration of Independence, distort the meaning of the Fifth and *211 Fourteenth Amendments, we should find-this legislation constitutionally invalid.
The Appellate Division arrived at the obvious contradiction that even though the foetus is a human being with “ a separate life from the moment of conception ”, it need not be considered a person under the Fifth Amendment. Again the Appellate Division adopted the theory that the State is supreme and free to degrade the inalienable rights of human beings which were not given to them by the State and cannot be diminished nor taken away by the State. The Appellate Division and the majority agree that the “ state ”, as in Nazi Germany, could decide what human beings are persons or nonpersons. Human beings are not created by any woman unilaterally — only with the aid of viable semen. Men and women can have intercourse thousands of times and fail to create a foetus. The woman and the man, not only the State, are obliged to recognize the inalienable rights that issue out of the uncontroversial factors flowing out of one’s humanity. There is the sanctity of human life. To pass a law authorizing foetuses’ destruction is akin to establishing a State religion which conflicts with the rights given to those conceived in our democracy. To state that the present law does not violate the freedom of conscience of those who believe abortion to be a crime while the public revenues and public institutions are used is to resurrect the disgraceful argument that the citizens of Nazi Germany knowing of the death camps had an individual freedom of conscience to shrug off the atrocities of Dachau, Auschwitz and the other death camps. The question answers itself once we look at that society under Hitler.
The deeper disease in this legislation is the widening gap between the American self-image of a country that values human Ufé and the reality of a growing preoccupation of the hedonists with a competitive drive for La Dolce Vita. Because some women of means have practiced abortion for years without regard for the then existing laws or the consequences apart from death is no reason to legalize it and conduct a campaign among the poor to convince them that philosophically and biologically they can consider an unborn child as one not a distinct human being with an individual right to life.
*212 The Presidential Commission on Abortion fails to distinguish between an unwanted and unplanned, birth and unwanted children. Adoptive agencies all over the United States have long waiting lists of prospective parents eager for a baby. But there are no babies to adopt. Every baby in the United States being aborted because of an alleged belief that the infant is unwanted is being denied life on the basis of an untruth. Our society has for ages allowed the woman to discontinue a responsibility for the developing human organism when that organism has reached a stage of development at which this responsibility can be transferred to another. The argument in Abele v. Markle (342 F. Supp. 800, supra) completely evades this option and relies entirely on the concept that a woman’s body is “ private property ” to be used as she wishes without interference from the inalienable rights of the unborn which was created when she chose to use her body in conjunction with the body of a man. I remind you that the woman’s body, her “private property”, cannot unilaterally create a foetus — nor can the body of a man. Incidentally if it is “ private property ’ ’ public funds cannot be constitutionally directly or indirectly used by hospitals to dispose of the foetus. The premise relied on by the courts and the Legislature is a false premise because the issue is not whether the woman has a right to use her body as she wishes (of course she has and does) but rather, if perchance another human being is conceived, that human being has an inalienable right to life that neither she, nor the man, nor any State, has the legal power to destroy.
As long as the proponents of abortion, all of whom I assume condemn genocide, have no rational reason to refuse to assign the same principle of.natural law to abortion as they do to genocidé, they are inconsistent.
To sum up, conception can be legally avoided — adoption opportunties are enormous — abortion legislation except in rare medical cases is neither necessary, humanly acceptable, legal nor constitutional.
The fundamental nature of life makes impossible a classification of living, human being as nonpersons, who can be excluded from the protection of the Constitution of the United States so that their right to life can be taken from them in spite of the due process clause and equal protection clause. Such a classi *213 fication is constitutionally suspect. The relationship between the classification excluding this human group of foetuses from the enjoyment of the right to life and the fabricated purposes for which the classification is made are so imperfect that it follows that the classification is clearly unconstitutional.
For instance, this abortion legislation gives the. woman the right without the knowledge of the man to destroy the foetus who has, under the New York State law, the right of inheritance for devolution of property if the father dies intestate. By this act the woman, if she should be the wife, would increase her share in the intestate estate by confiscating the inheritance rights of the foetus.
In answer to the concurring opinion of Judge Jasen, which was filed after this opinion, I merely add that there can be no debate or value judgment when the operating doctors and their nurses examine the bucket in the operating room. They should know they have destroyed living human beings, the remains of which are in the bucket. If they rely on the opinions of the self motivated, they should examine the exhibit at the Smithsonian Institute. The United Press International recently reported the birth of a foetus at 21 weeks in a New York hospital. Was it " less — than =— human ’ ’ ?
Accordingly the order of the Appellate Division should be reversed and chapter 127 of Laws of 1970 be declared unconstitutional.

 A policy in this case established in 1970 by one Assemblyman who switched his vote after the resolution was defeated through some unknown influence. The Legislature repealed the 1970 law and the law passed in 1972 by the Legislature was vetoed.